'O'

1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

11

12   MICHAEL NATHANS,              CV 20-4977-RSWL-MRWx

13            Plaintiff,           **ORDER re: Plaintiff's**
                                   **Motion for Summary**
14        v.                       **Adjudication** [20]

15
     UNUM LIFE INSURANCE
16   COMPANY OF AMERICA,

17            Defendant.

18

19       Plaintiff Michael Nathans ("Plaintiff") brings this

20   Action [1] against Defendant Unum Life Insurance Company

21   of America ("Defendant"), alleging state law claims for

22   breach of contract and breach of the implied covenant of

23   good faith and fair dealing.  The Action arises out of

24   Plaintiff's claim for benefits under a disability

25   insurance policy issued by Defendant.  Currently before

26   the Court is Plaintiff's Motion for Summary Adjudication

27   (the "Motion"), in which Plaintiff seeks a determination

28

                              1

that the subject disability policy is governed by California law, not ERISA.

Plaintiff argues threefold in his Motion: (1) his original policy was either not part of an ERISA plan or met the "safe harbor" criteria for exemption from ERISA coverage; (2) his removal from a group plan rendered ERISA inapplicable; and (3) his policy's lapse and subsequent reinstatement rendered ERISA inapplicable. See generally Pl.'s Mem. in Supp. of Mot. for Summ. Adjudication ("Mot."), ECF No. 20-1; Pl.'s Reply in Supp. of Mot. for Summ. Adjudication, ECF No. 22.  The Court finds Plaintiff's second argument both compelling and dispositive.  Having reviewed all papers submitted pertaining to this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **GRANTS** the Motion.

## I.   BACKGROUND

### A.   Factual Background

#### 1.   Background

In 1994, Plaintiff worked in the offices of law firm Duran Loquvam, Lehman & Roberts ("DLL&R").  Pl.'s Statement of Uncontroverted Facts ("Pl.'s SUF") ¶ 1, ECF No. 20-2.  The parties dispute whether Plaintiff was a lessee of office space at DLL&R or an employee of DLL&R. Id. ¶ 1; Statement of Genuine Disputes of Material Facts & Def.'s Statement of Undisputed Facts ("Def.'s Resp. to SUF") ¶ 1, ECF No. 21-2.  While Plaintiff worked in the office of DLL&R, one of the DLL&R partners, John Duran, suggested to Plaintiff that he speak to insurance agent

2

1    Thomas Isenhour.  Pl.'s SUF ¶ 1; Def.'s Resp. to SUF ¶
2    1.  Plaintiff thereafter submitted an application to
3    Defendant for disability insurance.  Pl.'s SUF ¶ 2;
4    Def.'s Resp. to SUF ¶ 2.  The application included
5    various coverage options under the heading "INDIVIDUAL
6    DISABILITY PLANS."  Pl.'s SUF ¶ 3; Def.'s Resp. to SUF ¶
7    3.
8         Upon completion, the application bore Plaintiff's
9    name and requested that Plaintiff be included on the
10   DLL&R FlexBill arrangement (the "FlexBill").  Pl.'s SUF
11   ¶ 2; Def.'s Resp. to SUF ¶ 2.  Plaintiff also indicated
12   in the application that the "employer" would pay the
13   premiums.  Pl.'s SUF ¶ 4; Def.'s Resp. to SUF ¶ 4.
14   Paragraph 6 of the application's agreement provided,
15   "[p]ayment of all premium is my responsibility as owner
16   of the policy.  If my employer . . . collects, pays or
17   forwards any part of the premium for this policy, they
18   act as my agent and not as agent for [Defendant].  If
19   [Defendant] does not receive premium as due, the policy
20   will lapse."  Decl. of Corinne Chandler ("Chandler
21   Decl.") Ex. A, at 290, ECF No. 20-3.
22        In April 1994, Defendant approved Plaintiff's
23   disability coverage.  Pl.'s SUF ¶ 7; Def.'s Resp. to SUF
24   ¶ 7.  The premiums were discounted fifteen percent, and
25   insurance agent Thomas Isenhour made a fifty percent
26   commission.  Pl.'s SUF ¶ 7; Def.'s Resp. to SUF ¶ 7.
27   Defendant issued to Plaintiff policy number LAD 282504
28   with an effective date of March 30, 1994.  Pl.'s SUF ¶

8; Def.'s Resp. to SUF ¶ 8.  Defendant's file contains
one check from DLL&R for Plaintiff's first premium
payment, and there is nothing in Defendant's records
indicating whether DLL&R continued to pay those
premiums.  Pl.'s SUF ¶ 5; Def.'s Resp. to SUF ¶ 5.
While the parties do not dispute that DLL&R paid the
premiums, they dispute whether Plaintiff reimbursed
DLL&R for the premiums.  Decl. of Michael Nathans in
Supp. of Pl.'s Mot. ("Nathans Decl.") ¶ 5, ECF No. 20-4;
Def.'s Resp. to SUF ¶ 5.

DLL&R principal Mr. Loquvam sent a letter dated
December 14, 1994, to Defendant, requesting that
Plaintiff be removed from the FlexBill.  Chandler Decl.
Ex. A, at 274; Def.'s Undisputed Facts ("Def.'s SUF") ¶
19, ECF No. 21-2.  Defendant wrote to Plaintiff,
offering to continue his coverage separately.  Pl.'s SUF
¶ 11; Def.'s SUF ¶ 11.  Thus, despite being removed from
the FlexBill within eight months of the policy's
effective date, Plaintiff maintained his coverage under
the same policy and was thereafter billed directly.
Pl.'s SUF ¶ 11; Def.'s Resp. to SUF ¶ 11.  Plaintiff
paid non-discounted premiums directly to Defendant.
Decl. of Fagan ¶ 19 Ex. 5; Def.'s SUF ¶ 20.

DLL&R disbanded around the year 2000, and Defendant
destroyed files related to the FlexBill in 2007 pursuant
to its document retention policy.  Pl.'s SUF ¶ 11;
Def.'s Resp. to SUF ¶ 11.

1        2.  <u>Policy Lapse</u>

2        Plaintiff's policy lapsed on June 7, 1997, for

3   nonpayment of premiums.  Pl.'s SUF ¶ 12; Def.'s Resp. to

4   SUF ¶ 12.  The policy contained a reinstatement

5   procedure—so long as the application was filed within

6   six months of the first overdue payment—under which a

7   policyholder had to (1) submit a reinstatement

8   application with evidence of insurability, (2) submit

9   the full amount of the overdue premium, and (3) obtain

10  approval of the application from Defendant.  Chandler

11  Decl. Ex. B, at 7; Def.'s Resp. to SUF ¶ 13.

12       The reinstatement provision provided that, if

13  Defendant approved the reinstatement request, the date

14  of coverage would be that of the approval date.  Pl.'s

15  SUF ¶ 13; Def.'s Resp. to SUF ¶ 13.  Moreover, "[i]f

16  reinstated, the policy would only provide benefits for a

17  disabling injury that occurred after the reinstatement

18  of the policy" and "for a disabling sickness that was

19  first diagnosed or treated more than 10 days after

20  reinstatement."  Pl.'s SUF ¶ 13; Def.'s Resp. to SUF ¶

21  13.

22       After Plaintiff submitted a reinstatement

23  application and a check to Defendant's individual

24  disability department, Defendant approved coverage in

25  January 1998.  Pl.'s SUF ¶¶ 14-15; Def.'s Resp. to SUF

26  ¶¶ 14-15.

27  ///

28  ///

3.   Disability Claim & Termination of Benefits

Plaintiff claimed disability in 2018.  Pl.'s SUF ¶ 17; Def.'s Resp. to SUF ¶ 17.  Plaintiff's benefits application included an "Attorney Questionnaire," which instructed as follows: "For Group-sponsored policies – the employer should complete this form," and "For Individual policies – the insured should complete this form."  Chandler Decl. Ex. A, at 31; Def.'s Resp. to SUF ¶ 17.  Plaintiff completed the form and was approved for benefits in 2019.  Pl.'s SUF ¶¶ 17, 19; Def.'s Resp. to SUF ¶¶ 17, 19.

Sometime in 2020, Defendant unsuccessfully attempted to contact Plaintiff's physician.  Pl.'s SUF ¶ 23; Def.'s Resp. to SUF ¶ 23.  Defendant subsequently terminated the benefits in May 2020 and asserted for the first time that ERISA applied to the claim.  Pl.'s SUF ¶ 23; Def.'s Resp. to SUF ¶ 23.

**B.   Procedural Background**

Plaintiff filed his Complaint [1] on June 4, 2020. After the parties stipulated [9] to a fourteen-day extension of time to answer, Defendant filed its Answer [10] on July 15.  On March 9, 2021, Plaintiff filed this Motion [20].  Defendant filed its Opposition [21] on March 16, and Plaintiff replied [22] on March 23.

## II.   DISCUSSION

**A.   Legal Standard**

The standard that applies to a motion for summary judgment is the same as that which applies to a motion

6

1  for partial summary judgment.  <u>See</u> Fed. R. Civ. P.

2  56(a).  Federal Rule of Civil Procedure 56(a) states

3  that a "court shall grant summary judgment" when "the

4  movant shows that there is no genuine dispute as to any

5  material fact and the movant is entitled to judgment as

6  a matter of law."  A fact is "material" for purposes of

7  summary judgment if it might affect the outcome of the

8  suit, and a "genuine" issue exists if the evidence is

9  such that a reasonable factfinder could return a verdict

10 for the nonmovant.  <u>Anderson v. Liberty Lobby</u>, 477 U.S

11 242, 248 (1986).  The evidence, and any inferences based

12 on underlying facts, must be viewed in the light most

13 favorable to the nonmovant.  <u>Twentieth Century-Fox Film</u>

14 <u>Corp. v. MCA, Inc.</u>, 715 F.2d 1327, 1328-29 (9th Cir.

15 1983).  In ruling on a motion for summary judgment, the

16 court's function is not to weigh the evidence, but only

17 to determine if a genuine issue of material fact exists.

18 <u>Anderson</u>, 477 U.S. at 255.

19 **B.  <u>Discussion</u>**[1]

20      ERISA preempts state law that "relate[s] to any

21 employee benefit plan."[2]  29 U.S.C. § 1144(a).

22      [1] Both parties filed evidentiary objections.  Because the
23 Court does not rely on the evidence to which the parties object,
   the Court **OVERRULES** those objections **as moot.**
24

25      [2] ERISA defines an employee benefit plan to include, among
   other things, "any plan, fund, or program . . . established or
26 maintained by an employer or by an employee organization . . .
   through the purchase of insurance . . . medical, surgical, or
27 hospital care or benefits."  29 U.S.C. § 1002(1); <u>Stuart v. UNUM</u>
   <u>Life Ins. Co. of Am.</u>, 217 F.3d 1145, 1149 (9th Cir. 2000).
28

1  Plaintiff asserts his claims under a disability policy
2  that, according to Plaintiff, is not subject to ERISA
3  regulation.  He points to three distinct moments at
4  which ERISA was rendered inapplicable to the subject
5  policy: the inception of his policy (the "Initial
6  Policy"), the removal of his policy from the FlexBill
7  (the "Removed Policy"), and the reinstatement of his
8  policy following lapse (the "Reinstated Policy").  Mot.
9  1:10-17, 14:17-23.  Because the Removed Policy is
10  dispositive, the Court limits its analysis accordingly.
11      The undisputed facts establish that DLL&R requested
12  the removal of Plaintiff's policy from the FlexBill,
13  Defendant sent Plaintiff a letter that offered to
14  continue coverage separately, and Plaintiff thereafter
15  remitted payment for non-discounted premiums directly to
16  Defendant.  Plaintiff paid those premiums pursuant to a
17  contract exclusively between Plaintiff and Defendant.
18  Chandler Decl. Ex. B, at 1-33; Def.'s Resp. to SUF ¶ 8.
19  Courts have held that ERISA does not preempt state law
20  claims brought under similar policies.  See, e.g., Jilka
21  v. Unum Grp., No. 18-cv-02952-JD, 2019 WL 1221058, at *2
22  (N.D. Cal. Mar. 15, 2019) (finding ERISA inapplicable to
23  plaintiff's policy where the insurer sent plaintiff a
24  letter asking if he wanted to continue coverage and,
25  after electing to so continue, plaintiff thereafter paid
26  the premiums independent of his employer); DiNicola v.
27  Unum Life Ins., No. 2:17-cv-01437 SVW (AJWx), 2017 WL
28  6940531, at *3 (C.D. Cal. Sept. 12, 2017) (holding that

ERISA did not preempt Plaintiff's claims where the disability policy was "independent of the ERISA benefits from [the employer] and [did] not place any burdens on the plan administrator or the plan"); May v. Paul Revere Life Ins. Co., No. 5:13CV28, 2013 WL 4099997, at *5 (N.D.W. Va. Aug. 12, 2013) (holding that ERISA did not preempt plaintiff's claims in "the unique situation where insurance is dropped by the employer and resumed through an offer by the insurer"); Eberlein v. Provident Life & Accident Ins. Co., No. 06-cv-02454-REB-MJW, 2008 WL 791944, at *6-7 (D. Colo. Mar. 20, 2008) (concluding that plaintiff's policy was not subject to ERISA where plaintiff obtained an individual policy as part of an employee benefit plan and was subsequently offered ongoing coverage by the insurer under the individual policy).

Although the Ninth Circuit's decision in Waks v. Empire Blue Cross/Blue Shield, 263 F.3d 872 (9th Cir. 2001), is not squarely decisive, the court's reasoning is instructive here.  In Waks, the Ninth Circuit held that ERISA does not preempt claims arising under a converted policy—that is, an individual policy based on conversion rights in a group plan.  263 F.3d at 875-76. To be sure, Plaintiff's Removed Policy does not arise from conversion rights like the policy in Waks.  As one court recognized, however, policies like the one at bar "much more closely resemble[] a 'converted policy'" than continuation coverage and are therefore not sufficiently

1   "related to" an ERISA plan.  See Jilka, 2019 WL 1221058,
2   at *2 (citing Waks, 263 F.3d at 875) (noting that, where
3   plaintiff elected to separately maintain individual
4   coverage after the employer ceased payment of premiums,
5   "[plaintiff's] policy much more closely resembled a
6   'converted policy' . . . that was no longer subject to
7   ERISA").  This is because, as articulated in Waks,
8   "[t]he contract under the [Removed P]olicy is directly
9   between the insurer and insured.  It is independent of
10  the ERISA plan and does not place any burdens on the
11  plan administrator or the plan."  Waks, 263 F.3d at 876.
12      In opposition, Defendant advances the purported
13  maxim, "once ERISA, always ERISA."  Kerton, 2005 WL
14  3440716, at *4.  But Defendant fails to contextualize
15  this phrase.  Indeed, the court in Kerton recognized an
16  important qualification to the "once ERISA, always
17  ERISA" notion based on a reading of Waks: "'once ERISA
18  always ERISA,' even if the policy continues after
19  termination of the employment relationship, *unless the*
20  *policy is converted to an individual policy*."  Kerton,
21  2005 WL 3440716, at *4 (emphasis added).  There was no
22  reason for the Kerton court to consider the existence of
23  an individual policy because the plaintiff claimed
24  benefits under the original group plan.  Id.
25      Other cases that Defendant cites are
26  distinguishable because those courts confronted the
27  existence or nonexistence of an ERISA plan, not the
28  relationship between the ERISA plan and the plaintiff's

1   policy.  See Peterson v. Am. Life & Health Ins. Co., 48
2   F.3d 404, 407-08 (9th Cir. 1995) (holding that
3   plaintiff's policy, which was part of a group ERISA
4   plan, remained subject to ERISA after the only covered
5   employee was transferred to a different policy); see
6   also Finkelstein v. Guardian Life Ins. Co. of Am., No. C
7   07-01130 CRB, 2007 WL 1345228, at *4-5 (N.D. Cal. May 8,
8   2007) (holding that ERISA preempted plaintiff's policy
9   despite the employer's dissolution and plaintiff's
10  status as the sole insured under the subject policy);
11  Kerton, 2005 WL 3440716, at *4 (holding that plaintiff's
12  disability policy was an ERISA policy despite the
13  termination of plaintiff's employment and the insolvency
14  of the employer); Judith Miller, M.A., LMFCT v.
15  Provident Life & Accident Ins. Co., No. CV99-
16  9464ABCRNBX, 2000 WL 1341480, at *4 (C.D. Cal. Sept. 5,
17  2000) (stating "that an insurance policy that *was* part
18  of an established ERISA plan is governed by ERISA even
19  if the plan is no longer maintained as an ERISA plan by
20  the employer").  While Defendant may be correct that
21  changes in the employment relationship or payment
22  structure are not alone sufficient to strip the plan of
23  ERISA's governance, the character of the plan is
24  immaterial here.  Critically, even assuming that the
25  DLL&R FlexBill constituted an ERISA plan, Plaintiff's
26  Removed Policy constituted independent coverage not
27
28

1  sufficiently "related to" such a plan.[3]

2      Further bolstering the Court's conclusion is that

3  courts routinely evaluate ERISA preemption with the

4  backdrop of the "two central objectives of ERISA

5  regulation: protection of employee interests, and

6  administrative ease for employers." Waks, 263 F.3d at

7  875 (citations omitted).  Neither of these objectives is

8  implicated here, as DLL&R had no connection with the

9  Removed Policy and has been defunct since 2000.  Indeed,

10 "in this case ERISA preemption would be an absurd result

11 because there is no ERISA plan and no administrator. . .

12 . State law therefore cannot impose conflicting

13 requirements on any employer or ERISA plan

14 administrator." Id. at 876; see also Demars v. CIGNA

15 Corp., 173 F.3d 443, 450 (1st Cir. 1999) ("[W]hat

16 matters for ERISA purposes is . . . the nature of the

17 employer's ongoing administrative and financial ties to

18 the policy.  If no such ties exist, the policy should

19 not be subject to ERISA regulation.").

20                    **III.  CONCLUSION**

21     It is undisputed that Defendant removed Plaintiff's

22 policy from the FlexBill in 1994.  Following an offer

23

24     [3] Given the Court's holding that the subject policy is not
governed by ERISA, the Court need not address the parties'
25 arguments concerning Plaintiff's Reinstated Policy.  If the
Reinstated Policy constituted new coverage, as argued by
26 Plaintiff, ERISA would be rendered inapplicable under the above
analysis.  If the Reinstated Policy constituted a continuation of
27 the coverage under the Removed Policy, the Court's determination
that the Removed Policy is not subject to ERISA controls.
28

from Defendant to maintain coverage separately,
Plaintiff paid non-discounted premiums directly to
Defendant under a contract exclusively between Plaintiff
and Defendant.  Under these facts, the Court **GRANTS**
Plaintiff's Motion for Summary Adjudication on the issue
of ERISA's inapplicability to Plaintiff's policy.

   **IT IS SO ORDERED.**


DATED: July 20, 2021        _____/s/ Ronald S.W. Lew_____
                            **HONORABLE RONALD S.W. LEW**
                            Senior U.S. District Judge